**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HAMID ABDUL-SHABAZZ, | |
| Petitioner, | **Civil Action No. 14-3959 (ES)** |
| v. | **OPINION** |
| PATRICK NOGAN, et al., | |
| Respondents. | |

**SALAS, DISTRICT JUDGE**

Before this Court is the Amended Petition for a writ of habeas corpus of Petitioner Hamid Abdul-Shabazz ("Petitioner"), brought pursuant to 28 U.S.C. § 2254. (D.E. No. 8). Following an order to answer (D.E. No. 10), Respondent filed a response to the petition (D.E. No. 21-1), and Petitioner filed a reply (D.E. No. 24). For the following reasons, the Court DENIES the Petition, and declines to issue a certificate of appealability.

## I. BACKGROUND

In its opinion affirming the denial of post-conviction relief ("PCR") of Petitioner, the New Jersey Superior Court, Appellate Division, provided the following summary of the factual background of Petitioner's trial:

> On May 3, 2003, the victim, Joseph Robinson left his home to go to Passaic County Community College, where he was enrolled as a student. [] On the way to school, Robinson was accosted by two men, who he later identified as defendant and Cantey. [] Cantey hit Robinson in the shoulder and "[a] struggle ensued." [] Defendant and Cantey slapped Robinson and "tried to pull things from his pockets and take his backpack. Robinson tried to run, but defendant caught him and struck him in the face. Cantey then left; after which

1

> defendant pointed a handgun at Robinson, threatened him, laughed, and then left." []

> Later that month, Robinson saw Cantey on the street and called the police, who arrested him. [] In early June, Robinson saw defendant on the street and saw him enter a residence. [] Robinson called the police, who entered the building and brought defendant outside, "where Robinson made a positive identification of defendant as one of his two attackers."

(D.E. No. 20-44 at 2-5).

> Following a trial, a jury convicted defendant [in August of 2006] of first-degree armed robbery, *N.J.S.A.* 2C:15–1; third-degree aggravated assault (as a lesser-included offense of attempted murder), *N.J.S.A.* 2C:12–1b(7); fourth-degree aggravated assault, *N.J.S.A.* 2C:12–1b(4); second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4; and second-degree certain persons not to have weapons, *N.J.S.A.* 2C:39–7. At sentencing, the judge merged various counts and imposed an aggregate eighteen-year term, subject to NERA, with a five-year period of parole supervision upon release.

(*Id.* at 2).

Petitioner appealed his conviction and sentence. The Appellate Division affirmed his conviction on February 29, 2008 (D.E. No. 20-33), and the New Jersey Supreme Court denied certification on May 30, 2008 (D.E. No. 20-32).

Petitioner made a motion for a new trial, and filed a petition for post-conviction relief ("PCR"). After an evidentiary hearing was held, the PCR petition and motion for a new trial were denied on January 12, 2012. Petitioner then appealed that denial, and on November 21, 2013, the Appellate Division affirmed the denial of PCR and the motion for a new trial. (D.E. No. 20-44).

With respect to the PCR petition and motion for a new trial, the Appellate Court affirming the denial of PCR detailed the facts:

> On August 13, 2008, defendant filed a motion for a new trial and a petition for PCR. In support of his applications, defendant presented a certification from Cantey, who alleged defendant had not been

> involved in the robbery. He also submitted a certification from a
> friend named Anthony Allen. Allen alleged that, "sometime
> between the year 2004 and 2005," he drove Robinson and his mother
> to defendant's trial attorney's office because Robinson wanted to
> tell the attorney "he made a mistake when he identified [defendant]
> as a person that robbed him." Allen asserted that, after the group
> arrived at the office, the attorney refused to speak to them and they
> then returned home. Defendant's cousin, Craig Dooley, submitted
> a certification in which he stated he answered the door at the
> residence when defendant was arrested. Dooley asserted that the
> police did not have a warrant and he "did not give any consent for
> the police to enter the house."
>
> Judge Joseph A. Portelli conducted a three-day evidentiary hearing;
> listened to testimony from Cantey, Allen, and Dooley; found that
> none of defendant's witnesses were credible; and then denied
> defendant's motion for a new trial and his petition for PCR. In a
> lengthy oral opinion, Judge Portelli thoroughly explained the basis
> for his credibility determinations and made extensive factual
> findings on each of defendant's factual contentions.

(D.E. No. 20-44 at 3-5).

Petitioner appealed and the New Jersey Supreme Court denied certification on June 5, 2014

(D.E. No. 20-48), and denied Petitioner's motion for reconsideration on October 2, 2014 (D.E. No.

20-47). Petitioner then filed a habeas petition with this Court on June 7, 2014. (D.E. No. 1). On

August 9, 2014, Petitioner submitted a letter requesting that the Court stay his habeas petition to

exhaust further claims in state court. (D. E. No. 4). On October 14, 2014, the Court ordered that

his petition be administratively terminated because he failed to use the correct form for his habeas

petition. (D.E. No. 6). Petitioner then filed an Amended Petition with this Court on November 5,

2014, raising the same grounds as in his original Petition. (D.E. No. 8 at 23-35).

The Amended Petition raises six claims:

1. Petitioner is entitled to a new trial because of newly discovered evidence.

2. Petitioner was deprived of constitutional rights to effective assistance of
   counsel by his trial attorney's failure to properly investigate to receive actual
   certainty whether petitioner's picture was contained in the computer data base

3

of photos shown by the Passaic Police to the complaining witness Joseph Robinson.

3. Petitioner was deprived [of] his state and federal constitutional rights to the effective assistance of counsel when his trial attorney failed to challenge the legality of his arrest and the resulting identification.

4. Trial counsel's failure to object to the trial judge's jury charge on an essential element of robbery offense, i.e. "knowingly" as it was not alleged in the indictment and found by the grand jury, not only deprived petitioner of effective assistance of counsel, but also of his constitutional right to be tried only on charges presented in an indictment and returned by the grand jury.

5. Petitioner was deprived [of] his constitutional rights to the effective assistance of counsel when his trial attorney failed to present an alibi witness without first having interviewed Mr. James Selliken.

6. Petitioner was denied his constitutional rights to effective assistance of counsel when his trial attorney failed to take a statement, or notify the state of witness (Anthony Allen) who showed up at his office with complaining witness (Joseph Robinson) admitting that his identification of Petitioner was mistaken.

(*Id*.).

Respondent was ordered to file an answer to the habeas petition. (D.E. No. 10). Petitioner then submitted further letters requesting that this Court stay his habeas petition (D. E. Nos. 11-13), and on October 16, 2015, this Court denied Petitioner's motion for a stay and abeyance, explaining that Petitioner raised the same grounds in both habeas petitions and never specified which claims he was waiting to exhaust (D.E. No. 14). On December 28, 2015, Respondent filed an answer, arguing that Petitioner's claims lack merit, and that Claim I fails to raise constitutional issues and Claim V is unexhausted. (D.E. No. 21-1.)

## II.   <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States."  A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012).  Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court.  *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Id.*  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine

whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins,* 546 U.S. 333, 339 (2006)).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996); *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

### III. <u>DISCUSSION</u>

### A. Claim One: Newly Discovered Evidence

Petitioner asserts that he is entitled to a new trial because of the discovery of new evidence. (D.E. No. 8 at 23). In support of his claim, Petitioner alleges that his co-defendant, Anthony Cantey, "subsequent to trial . . . gave a certification regarding the crimes . . . affirm[ing] that Hamid Shabazz was not involved in the case." (Am Pet. at 23). He explains that Mr. Cantey admitted to committing the crimes and that an individual by the name of Hector DeJesus was his accomplice, not Petitioner. (*Id*.). The Law Division judge, Judge Portelli, assessed this claim on PCR, held an evidentiary hearing, and found the co-defendant's statements not credible. (D.E. No. 20-31 at 3-7).

Petitioner presented this claim to the Appellate Division on his PCR application, which represents the last reasoned decision on this claim. It rejected this claim for the reasons expressed by the Law Division judge, adding:

> The judge found that Cantey's claim that another individual, now deceased, was involved in the robbery, was "unworthy of belief." The judge noted that Cantey waited almost seven years to make this claim and that, in all that time, Cantey never told anyone, including his own attorney, that defendant was not a participant. In addition, the judge found there were "significant discrepancies" between Cantey's testimony at the hearing about the details of the robbery and the accounts he gave in two earlier written statements. Because Cantey's claims were not credible, Judge Portelli found that defendant was not entitled to a new trial on the basis of newly-discovered evidence.
>
> . . .
>
> *Rule* 3:20–1 provides that "[t]he trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice." On appeal, a "trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." *R.* 2:10–1. Where, as here, the judge conducts an evidentiary hearing, we must uphold the judge's factual

findings, "'so long as those findings are supported by sufficient credible evidence in the record.'" *State v. Rockford*, 213 N.J. 424, 440 (2013) (quoting *State v. Robinson,* 200 *N.J.* 1, 15 (2009)). Additionally, we defer to a trial judge's findings that are "'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" *Ibid.* (alteration in original) (quoting *Robinson, supra,* 200 *N.J.* at 15).

Judge Portelli specifically found that Cantey's claim that defendant was not involved in the robbery was "unworthy of belief" and he carefully explained why he reached that determination. We defer to the judge's credibility findings. Based upon the judge's specific and detailed findings of fact concerning Cantey's lack of credibility, we cannot conclude that the judge erred in denying the motion for a new trial.

(D.E. No. 20-44 at 8-9).

Petitioner alleges, based on Mr. Cantey's certification, that he did not commit the robbery, but that Mr. Cantey and Mr. DeJesus did, which amounts to a claim of actual innocence, though he does not use those words specifically. In *Herrera v. Collins*, the Supreme Court explained that claims "based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*; s*ee e.g.*, *Smith v. Wainwright,* 741 F.2d 1248, 1257 (11th Cir. 1984) (quoting *Shaver v. Ellis,* 255 F.2d 509, 511 (5th Cir. 1958)) ("newly discovered evidence in the form of a confession by another does not render the conviction void and subject to collateral attack by habeas corpus because it goes to the merits of the conviction, not its legality"); *see also Sanders v. Nunn*, 2006 WL 231669, at *5 (D.N.J. Jan. 31, 2006) (citing *DeMartino v. Weidenburner*, 61 F.2d 707, 711 (3d Cir. 1980) (citing *Townsend v. Sain,* 372 U.S.

293, 311 (1963)) ("The existence of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.").

However, the *Herrera* Court left open the possibility of a freestanding claim of actual innocence—at least in the capital context. *See Herrera* 506 U.S. at 417 (assuming "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be *extraordinarily high*.") (emphasis added).

Here, even assuming a freestanding claim of actual innocence is cognizable under § 2254, the evidence provided by Petitioner does not meet the "extraordinarily high" standard of proof required for such a claim. The Law Division judge held an evidentiary hearing in which Mr. Cantey testified. (D.E. No. 20-29). The State elicited testimony from Mr. Cantey that appeared to contradict his earlier statements to the police. (*Id*. at 6-8). Based upon these inconsistencies, as well as the fact that Mr. Cantey never mentioned this to his own trial counsel, and in light of Mr. Cantey's prior criminal history, the judge on PCR denied his motion for a new trial. This Court is not convinced that Petitioner has demonstrated by clear and convincing evidence that the state court erred in its determination of the facts. *See* 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Nor, in light of the record, is this Court convinced that the judge's credibility determination was unreasonable. *See, e.g.*, *Sanna v. Dipaolo,* 265 F.3d 1, 10 (1st Cir. 2001) ("Credibility is quintessentially a matter of fact, reserved in almost every circumstance for

the trier . . . it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review.").  Because a claim of actual innocence has an exceptionally high threshold and Petitioner has not shown that the state court's credibility determination was unreasonable, this claim for habeas relief will be denied.

### B.  Claims Two through Six:  Ineffective Assistance of Counsel

Petitioner's remaining grounds for habeas relief, are based on his assertion that he was denied his Sixth Amendment right to the effective assistance of counsel.  (Am Pet at 23-35).  The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  *Id.* at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness."  *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission."  *Id*. at 1083.  "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not

determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland,* 466 U.S. at 697). On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable, a higher standard. *Harrington,* 562 U.S. at 101.

### 1. Claim Two: Failure to investigate

In his second ground for habeas relief, Petitioner asserts that he was denied effective assistance of trial counsel because his attorney failed to properly investigate whether his photo was contained in the database shown to Mr. Robinson, the victim. (D.E. No. 8 at 24). In support of his claim, he alleges that Mr. Robinson testified at trial that he reviewed the photos but could not identify Petitioner's photo in the database. (*Id.*). Despite this, Petitioner claims his trial counsel did not properly investigate whether Petitioner's photo was in fact in the database. (*Id.*). He further alleges that on a motion for additional discovery—which his PCR counsel filed and the court granted—the prosecutor's office turned over discovery that showed there were two photos of Petitioner in the database at the time. (*Id.* at 4).

Petitioner raised this claim in his PCR proceeding. The Appellate Division concluded that this claim did not present sufficient merit to warrant discussion and affirmed the PCR court's denial of the claim:

> We have considered these contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(2). We affirm substantially for the reasons expressed by Judge Portelli in his comprehensive and well-reasoned oral opinion.

(D.E. No. 20-44 at 8).

In addition, the Appellate Court laid out the facts relevant to this claim and the trial judge's finding:

> [P]rior to seeing defendant and Cantey on the street after the robbery, Robinson looked through a "computer database" of photographs at the police station. He was not able to identify the perpetrators from the photographs he observed. Because of his prior arrests, defendant believed his photograph was in the database and that Robinson failed to identify him when he saw it. Defendant argued his trial attorney was ineffective because he failed to make a motion to obtain all the photographs in the database so he could make this argument to the jury.
>
> Judge Portelli rejected this argument, finding that defendant's attorney's "actions were done with skill and perseverance with respect to the identification issue." After reviewing the trial transcript, the judge found the attorney consistently raised the argument that Robinson had misidentified defendant and had specifically brought out, through cross-examination of a detective, that Robinson "could have looked at [defendant's] photo and not identified him[.]" In his summation, the attorney also argued that the State had "not presented any testimony to [the jury] to show that [defendant's] picture was not in the hundreds or—for the thousands of any pictures that he looked at[.]" Thus, the judge found that defendant's counsel did not provide ineffective assistance.

(*Id*. at 6-7).

A careful review of the record demonstrates that the state courts did not unreasonably apply *Strickland* to the facts of Petitioner's case. The trial judge on PCR pointed to multiple instances, on cross-examination, and during summation where defense counsel did in fact specifically raise the argument that Petitioner's photo may or may not have been in the database, which belies Petitioner's argument. (D.E. No. 20-31 at 8-9).

On defense counsel's cross-examination of a Passaic Detective, he asks:

Q: Okay. You don't know if Mr. Shabazz was in [the computer database]?

A: No, sir.

Q: Or do you?

A: No sir.

Q: So in other words, what we do is – right now we have a case where Mr. Robinson

could have looked at Mr. Shabazz's photo and not identified him?

A: Correct.

 (D.E. No. 20-19 at 19); (D.E. No. 20-31 at 8).

Further, during his closing arguments, defense counsel stated:

> The photographs. They, being the State, has not presented any
> testimony to you to show that Mr. Shabazz's picture was not in the
> hundreds or the thousands of any pictures that he looked at, meaning
> Robinson on 5/3/03.  It would have been incumbent and it should
> have been incumbent upon the detective or the State or somebody to
> go through the pictures.  Go through the pictures and say, oh, yeah,
> Mr. Shabazz was there in the picture it wasn't there.  But [detective]
> Jennings said he couldn't tell you one way or the other.

(D.E. No. 20-20 at 31).

As the above examples demonstrate, defense counsel did in fact raise the issue of

misidentification with respect to the database.  Thus, the state courts did not unreasonably apply

*Strickland* when finding defense counsel was not ineffective.

Petitioner, in his facts supporting this claim, appears to raise an additional claim of

ineffective assistance of counsel, related to a circumstance during trial wherein defense counsel

agreed to a particular jury instruction.  (D.E. No. 8 at 25).  Petitioner claims the instruction gave

the impression that Petitioner was not in the database at the time Mr. Robinson reviewed it, and

prevented Petitioner from establishing if he was in fact in the database.  (*Id*).

According to Petitioner, the instruction read:

> [T]here is no suggestion here, and, in fact, its agreed that there was no arrest that would generate a photograph anywhere outside of Passaic regardless, that would have gotten into this system . . . . So its agreed by everyone that there was no arrest that would have generated a photograph. An arrest made someplace out of the municipality of Passaic that would have generated a photograph that would be in that system.

(Am. Pet at 25).

Petitioner, in his brief petitioning for certification to the New Jersey Supreme Court, notes that the Appellate Court, in affirming the denial of PCR, did not address this claim. (D.E. No. 20-46 at 4). Assuming this is the case, even applying *de novo* review, we find the claim fails on the merits. Petitioner has not shown that his counsel's failure to object to this jury charge fell below an objective standard of reasonableness under the first prong of *Strickland*. From the record, it appears that defense counsel was concerned that the State's line of questioning regarding the source of photos in the database gave the jury the impression that Petitioner and his co-defendant had been arrested or convicted in towns other than where the crime took place. (D.E. No. 20-19 at 49). Defense counsel, concerned about the bias that would ensue, objected to the State's line of questioning and the trial judge agreed to tell the jury the following:

> THE COURT: [] So what I'm inclined to do is – and this is a windfall for the defense. I'm going to tell the jury that the questions that were asked may leave the impression that there was a Paterson arrest, and that was not the purpose of the question. And, in fact, it's agreed that there was not an arrest out of Passaic that would have generated a photograph. Just so you don't misunderstand . . . Well I'm going to tell them that there was no arrest period that would have generated a photograph anywhere.

(*Id*. at 50-51).

While Petitioner may be correct in stating that the instruction hindered his ability to argue that his photograph may have been in the database all along (from a possible prior arrest), it was a strategic choice by his defense counsel to help him in another way, and one this Court finds reasonable under the circumstances. His counsel reasonably feared that any hint of a prior criminal

history would bias the jury against Petitioner, and a limiting instruction was, therefore, necessary. *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."); *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998) ("Our review of ineffective assistance of counsel claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried. We therefore accord counsel's strategic trial decisions great deference."). Because of this, Petitioner likewise fails on this ground for habeas relief.

### 2. Claim Three: Failure to Challenge Arrest and Identification

Petitioner next argues that his counsel was ineffective for failing to challenge the legality of his arrest and for failing to make a motion to suppress the resulting identification of Petitioner. (D.E. No. 8 at 26). He states that the police did not have a warrant or probable cause to enter the home of Craig Dooley, where Petitioner was arrested, such that Mr. Robinson's subsequent identification of Petitioner amounted to fruit of the poisonous tree. (*Id*. at 26-27). He explains further that Mr. Robinson's sole identification of Petitioner took place as a result of the illegal search. (*Id*. at 27). With respect to the arrest, Petitioner states that had his counsel investigated the details surrounding the entry into the home properly, he would have discovered that Craig Dooley was not the homeowner, did not consent or sign a waiver allowing the police to enter the home, and his counsel could have used Mr. Dooley's testimony to refute the officer's testimony relating to the arrest. (*Id*.).

The Appellate Court in affirming the PCR judge's findings, which represents the last reasoned decision on this claim, found this claim similarly lacked merit:

> Based upon Dooley's testimony that he did not consent to the police
> entering the residence on the day of his arrest, defendant argued his

trial counsel was ineffective because he failed to file a motion to suppress Robinson's identification of him as a product of an "illegal arrest." Judge Portelli rejected this argument, finding that Dooley conceded he opened the door for the police at the insistence of his aunt, who was outside with the police when they went to the residence to find defendant. The judge also found that a motion to suppress would not have been successful because "the police had more [than] ample reason to enter the home without a warrant. They, in effect, possessed exigent circumstances coupled with the consent given by Mr. Dooley.

. . . .

To establish a prima facie claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable likelihood of success under the two-prong test set forth in *Strickland v. Washington,* 466 *U.S.* 668, 104 *S. Ct.* 2052, 80 *L. Ed.* 2d 674 (1984). Under the first prong, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 *S.Ct.* at 2064, 80 *L. Ed.* 2d at 693. Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Ibid.* That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 *S.Ct.* at 2068, 80 *L. Ed.* 2d at 698.

. . . .

Defendant failed to meet these standards . . . [t]he record also supports the judge's finding that Dooley opened the door for the police to admit them into the residence when they came to arrest defendant.

(D.E. No. 20-44 at 6, 10)

The Fourth Amendment ensures "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Consent to a search is a well-recognized exception to the general requirements of both a warrant and probable cause. *U.S. v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The consent given must be voluntary, which can be

assessed based on a range of factors. *Id.* (citation omitted). "The individual giving consent must also possess the authority to do so." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). Further, [a]ctual authority for a third party to consent to an entry by police exists when the third party has common authority over a premise." *Kirley v. Williams*, 330 F. App'x 16, 19 (3d Cir. 2009) (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)).

The Law Division judge, on petition for PCR, found that Petitioner's argument failed under the prejudice prong of *Strickland* because had trial counsel made a motion to suppress, the result would not have been different. (D.E. No. 20-31 at 4). Based upon the record, we find that the state courts correctly identified the *Strickland* standard and reasonably applied it to the facts.

During the evidentiary hearing, Mr. Dooley testified regarding the issue of consent:

Q: Did you answer the door?

A: Initially I did not answer the door. I was a little bit nervous about answering the door. In fact, I had had no intentions on answering the door because I didn't know what was – I – I didn't know what was going on. I was afraid. So –

Q: Then what happened?

A: I received a phone call from my aunt that she said they told me if you don't answer the door, they'll[sic] going to kick the door down. And simply because of that reason, I –

Q: What did you do as a result of that call?

A: I – I opened the door and –

 (D.E. No. 20-26 at 9-10).

As evidenced by the record, Mr. Dooley did consent to the police entering his home, by opening the door, after receiving the phone call from his aunt. While the record may indicate that Mr. Dooley was hesitant to open the door initially, it was his aunt, not the police, who ultimately convinced him to open the door. *See Stabile*, 633 F.3d at 231 (internal citations and quotations omitted) (delineating factors to be considered in assessing whether consent is voluntary: "age,

education, and intelligence . . . the repetition or duration of the questioning . . . the use of physical punishment . . . [the] setting in which the consent was obtained . . . the parties' verbal and non-verbal actions.").

Further, the record is clear that Craig Dooley, while not the homeowner, lived at the home where Petitioner was arrested. (D.E. No. 20-26 at 9). Based on these facts, it was reasonable for the state courts to find that trial counsel's failure to make a motion to suppress did not constitute a deficiency in representation. (D.E. No. 20-44 at 10). *See Woods v. Donald*, 135 S. Ct. at 1376 (explaining a federal court will overturn a decision "only when there could be no reasonable dispute that they were wrong"). The state court's decision represents a reasonable application of *Strickland*, and must therefore be denied.

### 3. Claim Four: Improper Jury Charge

In claim four, Petitioner appears to argue that his counsel was ineffective in failing to object to an improper jury instruction. Petitioner states in his Amended Petition:

> During a joint trial [the trial judge] . . . **constructively amended** the indictment when instructing the jury that in order for them to find Mr. Shabazz (and his codefendant) guilty of robbery, the state is required to prove . . . that while in the course of committing a theft, the defendant '**Knowingly**, inflicted bodily injury or used force upon another.'"

(D.E. No. 8 at 28) (emphasis in original).

Petitioner appears to make the incorrect argument that inserting the word "knowingly" into the jury instruction at trial, enhanced the grand jury charge of theft, to one of robbery at trial. (*Id.* at 8-9). Respondent, citing to N.J.S.A. 2C:2-2b(1)-(4), explains that New Jersey has four levels of culpable mental states, "purposely," "knowingly," "recklessly" and "negligently," and that "the "knowingly" level of culpability is lower than "purposely" but higher than "recklessly" or "negligently." (D.E. No. 21-1 at 41) (citing *State v. Sewell*, 127 N.J. 133, 139 (1992)). Thus,

Respondent argues, the grand jury charge which used the word "purposefully" exceeded the culpable mental state of "knowingly," on which Petitioner takes issue.[1] (*Id.*). Because of this, trial counsel was not ineffective.

Petitioner's *pro se* brief petitioning the New Jersey Supreme Court for certification, raises this claim, but provides no further details or support. (D.E. No. 20-46 at 10). The Appellate Court, in affirming the denial of PCR by the trial court, does not address this claim because it does not appear to have been raised on appeal from the denial of PCR. This claim is likely unexhausted because it was raised for the first time on a petition for certification to the New Jersey Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[T]he prisoner must fairly present his claim in each appropriate state court . . . .") (internal quotations omitted); *see also Evans v. Court of Common Pleas, Delaware Cty., Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992) ("A claim must be presented not only to the trial court but also to the state's intermediate court as well as to its supreme court. A claim is not deemed exhausted if it is raised for the first time in the state's highest court on discretionary review."). Nevertheless, putting this issue aside, this claim fails on the merits.

Petitioner fails under the prejudice prong of *Strickland*. Petitioner has not shown to a reasonable probability that the outcome of the proceeding would have been different if his attorney has objected to this jury charge. First, a review of the grand jury indictment shows that Petitioner

---

[1]    The grand jury transcript reads:

> 2C:15-1 reads: A person is guilty of robbery if, in the course of committing a theft, he inflicts bodily injury or uses force upon another or threatens another with or *purposely puts him in fear of immediate bodily injury*. An act shall be deemed to be included in the phrase "in the course of committing a theft," if it occurs in the an attempt to commit theft or in immediate flight after the attempt or commission.

(D.E. No. 88 at 68) (emphasis added).

was, in fact, indicted for the crime of robbery in the first-degree. (Am Pet. at 83). Therefore, the jury charge at trial could not have enhanced the charge to robbery, because he was already indicted for the crime of robbery in the first-degree. Second, reviewing the trial transcript it is evident that the trial judge more than adequately instructed the jury as to the elements of an offense of robbery and the definitions of "purposely" and "knowingly" such that trial counsel was not deficient in failing to object.[2] (D.E. No. 20-22 at 78-80). Had defense counsel objected, the objection would have most certainly been denied, and the jury charge would have been allowed to proceed. Accordingly, Petitioner has not shown that he was prejudiced by his counsel's failure to object to the jury charge, causing this claim to fail under the second prong of *Strickland*. As such, the Court will deny habeas relief on this ground.

---

[2]     The jury instruction reads, in relevant part:

> COURT: A person is guilty of robbery while armed if in the course of committing a theft, he *knowingly inflicts bodily injury* or uses force upon another, or threatens another with or purposely puts him in fear of immediately[sic] bodily injury
>
> . . .
>
>     So in order to find the defendant was guilty of robbery while armed, the State is required to prove each of the following three elements beyond a reasonable doubt. One, that the defendant was in the course of committing a theft. Two, that while in the course of committing that theft, the particular defendant *knowingly inflicted bodily injury* or – the defendant or accomplice – knowingly inflicted bodily injury or used force upon another or threatened the victim with *or purposely put him in fear of immediate bodily injury.*
>
> . . .
>
>     In addition to proving beyond a reasonable doubt that the defendant was in the course of committing a theft, the State must also prove beyond a reasonable doubt that while in the course of committing a theft, a defendant *knowingly inflicted bodily injury* or used force upon another.

(D.E. No. 20-20 at 78-80) (emphasis added).

#### 4. Claim Five: Alibi Witness

In ground five, Petitioner argues that his counsel was ineffective for failing to present an alibi witness, James Selliken. (D.E. No. 8 at 30). He recounts that on the day of the incident, he had been picked up by two women who brought Petitioner to their home. When they arrived at the home, Mr. Selliken was in the living room watching television and could have testified to not seeing Petitioner leave the home during the time the crime took place. (*Id*.). He claims his counsel was ineffective for failing to interview Mr. Selliken, who could have bolstered the witnesses who did testify, filling in any gaps in their testimony. (*Id*. at 31).

Respondent argues that this claim must be denied because it is unexhausted or, in the alternative, because it is procedurally defaulted. (D.E. No. 21-1 at 42-45).

This specific claim of ineffective assistance of counsel does not appear to have been raised to the New Jersey Supreme Court in either defense counsel's brief, or in Petitioner's *pro se* brief, petitioning for certification. (D.E. Nos. 20-45, 20-46). Nor was it raised on his appeal to the PCR Appellate court. (D.E. Nos. 20-34 & 20-42). The Appellate Court does, however, state in a footnote, when relaying the facts of the evidentiary hearing on PCR:

> Defendant also submitted a certification from James Selliken, who stated defendant was with him in a house on Gregory Street in Passaic at the time of the robbery. However, Selliken did not testify at the evidentiary hearing.

(D.E. No. 20-44 at 4). [3]

---

[3]     During the PCR proceeding, PCR counsel stated on the record:

> [] Your Honor, I think we're -- not going to be able to pursue because it was based upon the testimony of a witness – a potential witness James Selican (phonetic) who we've been unable to present to the Court. So I think that we have to withdraw Point 4.

(D.E. 20-29 at 15).

Thus, it appears, that when Petitioner had an opportunity to present this witness to make his claim of ineffective assistance of counsel, he was unable to do so.[4]

Irrespective of these issues, this claim nevertheless fails on the merits. Under the second prong of *Strickland*, this Court is not convinced that had Mr. Selliken testified, there is a reasonable probability the outcome of the case would have been different. Petitioner attaches to his habeas petition two affidavits from Mr. Selliken. (D.E. No. 8 at 46-48). One affidavit was taken on March 16, 2009, where Mr. Selliken states that he was told about Petitioner's trial by a relative, and that he tried to contact defense counsel multiple times during the trial but never received a call back. (*Id*. at 48). In the second affidavit, dated March 1, 2010, Mr. Selliken relays that he was watching television all night in the living room of 294 Gregory Avenue in Passaic, on the evening of May 2nd, 2003, through May 3rd, and that he saw Petitioner enter the home early in the morning on May 3rd, but never saw Petitioner leave the home. (*Id*. at 46-47). Mr. Selliken further states that there were three doors in the home, and to leave from any door, one would have to pass within view of the living room. While this testimony may have been helpful in strengthening Petitioner's case, this Court is not convinced that but for counsel's failure to produce this witness, the outcome would have been different.

First, two other witnesses, Tia Plummer and her mother Sharon Thomas, testified to being with Petitioner, in the same home, at 294 Gregory Avenue, on May 3rd, 2003, the day the crime took place. (D.E. No. 20-19 at 85; D.E. No. 20-19 at 112-113).[5] Despite the jury being presented

---

[4]      Petitioner does not argue in the instant habeas petition that his PCR counsel was ineffective for failing to present Mr. Selliken.

[5]      Mr. Robinson, the victim, testified to having left his home on May 3, 2003, the day of the crime, at 7:30 a.m. and shortly after the crime took place. (D.E. 20-12 at 68). Tia Plummer testified to being with Petitioner the entire day of May 3rd, 2003, sleeping next to him in the house from the early morning until noon. (*Id*. at 89). She further testified that Petitioner never left the house that day. (*Id*. at 89, 103-04). Sharon Thomas testified that she was awake all morning until she left for work at 7:30 a.m. and would have heard if anyone had left the house. (*Id*. at 113). Finally,

with these two alibi witnesses, the jury still convicted Petitioner. Second, as per Mr. Selliken's affidavit and Ms. Thomas' testimony, Mr. Selliken was not physically present with Petitioner during the time Petitioner was in the home. (D.E. No. 20-19 at 113; D.E. No. 8 at 46-47). Instead, Mr. Selliken was in the living room while Petitioner was upstairs. (*Id.*). Third, the victim, stated multiple times during his testimony that he was one hundred percent certain Petitioner was the one who had attacked him. (*See* D.E. No. 20-13 at 4-6, 25). Further, the victim testified to positively identifying Petitioner at the time of the arrest, and he subsequently positively identified him in court, at trial. (*Id.* at 23-24). The jury likely found him a compelling enough witness, to find Petitioner guilty. Weighing these facts together, that the jury had an opportunity to hear from two other alibi witnesses in the same home on Gregory avenue as Mr. Selliken claimed to be, as well as lengthy testimony from Mr. Robinson, the victim, this Court finds counsel was not ineffective in failing to present Mr. Selliken at trial.

### 5. Claim Six: Mistaken Identification

In Petitioner's final claim for habeas relief, he states that his counsel was ineffective for failing to take statements from Mr. Robinson and for failing to give Anthony Allen the opportunity to testify. (D.E. No. 8 at 33-34). He explains that Anthony Allen and Mr. Robinson attempted to meet with defense counsel, to relay that Mr. Robinson had misidentified Petitioner, but counsel refused to meet with them. (*Id.* at 33).

The Appellate Division on appeal from the denial of PCR stated:

> With regard to his petition for PCR, defendant argued his trial attorney was ineffective because he refused to meet with Robinson and his mother when Allen brought them to the attorney's office. However, Judge Portelli found that Allen's testimony was "not worthy of belief." Allen could not give a consistent account of how

---

Ms. Thomas testified that when she, Ms. Plummer, and Petitioner entered the home, Mr. Selliken was "in the living room sleeping on the couch," and that "he was, you know, half asleep, half awake." (*Id.*).

he came to meet Robinson. Allen stated he did not know Robinson, but claimed that after defendant described Robinson, Allen "recognized" him because Allen's aunt, or his mother, dated Robinson's father. Allen could also not explain why Robinson would not simply go to the prosecutor's office or the police to recant his identification if, as Allen claimed, that was his intention. Allen's claim was also inconsistent with the fact that Robinson identified defendant at trial. Finally, the judge found Allen had no reasonable explanation for why Allen himself did not contact the attorney, other attorneys in the firm with whom he claimed he was friendly, the police, or the prosecutor with this information if it were true.

(D.E. No. 20-44 at 5-6).

For this claim, like the other claims of ineffective assistance of counsel, the PCR Appellate Court cited the standards laid out in *Strickland* and found Petitioner failed to meet those standards. (*Id*. at 10-11).

The state court correctly identified the *Strickland* standard and reasonably applied it the facts of the case. As the record demonstrates, during the PCR evidentiary hearing, the judge heard testimony from Anthony Allen and ultimately found him not to be a credible witness. (D.E. No. 20-31 at 5). As noted above, a credibility determination is more appropriately left for a trier of fact and this Court will only disturb those findings when they are unreasonable, which this Court does not find in this instance. *See Keith*, 484 F. App'x at 697; *Sanna,* 265 F.3d at 10. The state court judge pointed to multiple instances of inconsistent testimony by Mr. Allen during the evidentiary hearing (*id.*), which is verified by the record (*see* D.E. No. 20-27 at 10 -13). Further, the judge noted the bizarre fact that Mr. Robinson, who allegedly claimed to have misidentified Petitioner, then subsequently at trial identified Petitioner with one hundred percent certainty. (*Id*. at 6; *see also* D.E. No. 20-13 at 4-6). The judge also noted the odd fact that Anthony Allen never subsequently attempted to speak with defense counsel, or anyone else, to relay that Mr. Robinson admitted to misidentifying Petitioner. (*Id*. at 7; *see also* D.E. No. 20-27 at 19). And further, Mr.

Allen himself stated on the record that he was good friends with defense counsel's legal partner. (D.E. No. 20-27 at 19).

Given that Anthony Allen proved a less than credible witness, and Mr. Robinson, despite abundant opportunity, never claimed to have misidentified Petitioner, defense counsel was not deficient in allegedly failing to take statements from Mr. Robinson or Mr. Allen. The state courts did not unreasonably apply *Strickland*, requiring this claim to be denied.

## IV.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further and a certificate of appealability is therefore denied.

## V.    CONCLUSION

For the reasons stated above, Petitioner's Amended Petition for habeas relief (D.E. No. 8) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**